Your Honor, the third case of the morning, call 210-023, Lebovich & Weber v. Dennis v. Reutten, on behalf of the appellant, Mr. Theodore Lebovich, on behalf of the employees, Mr. Jeffrey Ordonez. Mr. Lebovich, you may proceed. Thank you, Your Honor. Good morning. Theodore Lebovich, Lebovich & Weber PC, on behalf of the appellant and plaintiff in this cause. Let me say from the outset that I believe that this ruling could be a guidance to all probate attorneys in the Second District and, in fact, in the State of Illinois as to how we proceed with regard to retainer agreements and seeking fees in probate court. One of the issues I see is whether or not a retainer agreement, one of the issues, is effective and enforceable for a client when there is a petition for fees that is filed in the probate court under the Probate Act. If there is a petition for fees that's filed and a ruling is made with regard to that petition, is the attorney stuck with the decision of the trial court once a decision is made with regard to the fees under the guidance and the terms of the Probate Act? Do you agree that race judicata could be a bar or could not be a bar? I mean, that's the primary issue. I believe it's not a bar. Well... I mean, do you believe it's the primary issue in this case? I believe it is the primary issue in this case, yes. Then discuss the elements of race judicata and tell us why the elements don't comply with the concept or principle of race judicata. Well, one, was there a judgment on the merits rendered by a court of competent jurisdiction? You don't dispute that, as I understand, by the briefs, right? There was a judgment rendered in the probate case by a judge and it was in a court of competent jurisdiction. I don't dispute that. You don't dispute that. Correct. Secondly, is there an identity of the causes of action? That I dispute. Thirdly, is there an identity of the parties or the privies? That I dispute. In this particular case, the causes of action in the first, for instance, was a probate case for guardianship. And the petition for attorney's fees to the estate was collateral to that issue. In the second case, a small claims suit that was filed, the issue was specifically breach of contract on a retainer agreement for recovery of attorney's fees from the individual who retained the attorney, not from the estate, not from the executive or the guardian. Here's the problem that I see with the defense of the case here. The Supreme Court adopted the transactional test to determine whether there's an identity of causes of action for a judicata purposes. As I understand it, you filed suit in the small claims after the petition had been filed in the probate court. But were you seeking to recover fees for the same work under a different theory, but nevertheless for the same work that you had performed in the probate case? I don't believe it's the same work. I think there's a distinction. The distinction is an individual comes in, an individual retains me to represent him in a guardianship estate. I'm representing that individual. It isn't until he's actually appointed as the guardian virtually at the end of the case that I'm representing at that point the guardianship estate. Up until that point, I'm representing the individual to get appointed as guardian. What did you seek in the small claims action that you did not seek in petition 4 in the probate case? I sought to recover attorney's fees in representing the individual. But it was the same work. Maybe you were directing it toward a different party, under a different theory, but you had already completed that work, correct? I had completed the work, but when I petitioned in the guardianship case to the probate court, there was no evidence with regard to a retainer agreement. The retainer agreement was never an issue that was brought before the court at that point because under the probate act, I'm not sure that a retainer agreement… Well, part of it was because the contract retainer agreement was $275,000 and she reduced it to $250,000, so presumably she knew that you had an agreement for $275,000. Well, when the petition was filed in the guardianship case for recovery of attorney's fees against the estate, the affidavit stated the rate of $275 an hour. And so it wasn't from the retainer agreement that the court deduced that the fee was $275 an hour from the affidavit. Well, did you present the retainer agreement to the probate court? No. Why not? Because the retainer agreement was with Dennis Ritten individually. It wasn't with Dennis Ritten as executor. The retainer agreement wasn't with the estate. The fees that were being sought for recovery in the estate case were pursuant to the probate act. I mean, if a client comes in, you say to the client, I will represent you, here is my retainer agreement, my fees are $275 an hour, and it's not a time and charge basis, and whatever the time and charge works out to be, that's what you will be responsible for paying. Then the petition is filed with the probate court to recover the fees from the ward's estate, not from the individual. The subject of it is different parties, but let me ask you this. The issue in both actions is the amount of fees you should have received by virtue of your representation in these cases, correct? It is the amount of fees, but the determination of recovery of those fees is the distinction. It's a different theory, but you're trying to recover the fees for representing the parties in these cases, correct? And you had concluded your representation, so when the probate court ruled, you didn't do any additional work, did you, that you then brought to the small claims court? Or were you seeking the same, basically, judgment of the court for the same work you had already completed and presented to the probate court? That's what I'm talking about. What additional work did you do before you went into small claims? For example, when I presented, well, yes, essentially it's the same hours, it's the same kind of work. But again, I have to argue the distinction that it's not the same client, it's not the same test, it's not the same purpose. There's a contract in one instance, and in the other instance, it's strictly according to the probate act and the provisions of the probate act, and the court's discretion as to what is a reasonable fee under the terms of the probate act, not on contract law. And the reason that this was not brought up to the probate, when the probate court was going to assess fees, they had to determine what's reasonable. Can't they take into account that there's an agreement on what to pay? I don't know that it's relevant. Can they take it into consideration? I guess the court could, but I'm not sure that it's relevant. And it wasn't tended to the court because that was an agreement between myself and Mr. Ritten individually. It wasn't a petition for recovery from the ward's estate under the terms of the probate act. So what I contracted to recover over here is not relevant to what I'm entitled to recover under the tests of the probate act. It's a contract action here, and it's probate action guidelines over here. Well, you wouldn't certainly – I mean, you're looking just to supplement what you got. I mean, you're not looking to collect twice. No. So you've got the probate at its discretion, the probate court gave you less than the retainer agreement. Correct. And now you're seeking the difference between the retainer agreement and the amount of probate I gave you. Yes. Under the contract as agreed pursuant to the terms of the contract, and I'm not seeking it this time from the ward or the guardianship estate. I'm seeking it from Mr. Ritten individually because he's agreed. Is he entitled to – would he be entitled to – if he paid you or was found liable to pay you, would he be entitled to go back to the estate to get reimbursed then? He may be. I haven't really considered that. He may be. Okay. In which case, this just seems to make perfect sense to tell the probate court – I mean, I don't know – what criteria does the probate court use? I mean, it's got to decide what's fair, and I don't understand why no one would tell the probate court there's an agreement on what's going to be paid here. And if you don't give the full amount, then this guy's going to be liable for the difference, and he's going to come back to the estate and say, hey, I've got to get a collection from the estate. Well, I believe under the facts of this case, having submitted – even if I had submitted that contract in evidence to the probate court, I don't believe it would have made a difference because the probate court made a ruling, and this is in my affidavit, based upon what was the size of the estate, based upon the other fees which were paid out at the same time out of the guardianship estate that had been paid to the guardian ad litem and to the advocate for the ward. And the court determined the amount of time that was sought by myself on behalf of who eventually became the guardian in relation to the time that was spent by the other two attorneys in the case, which I thought was unreasonable because what they had to do in the case and what I had to do in the case were totally separate. I had to labor in more on the case. And so I don't believe that the probate court would have considered the contract as being a relevant issue in the case. In fact, one of the cases which was cited by the appellee in this case, Betoy, Judge Malik, the trial judge, said that, well, in that particular case, there was a hearing on the fees, and Judge Malik had a problem with some of the fees or the ways that they were proved up and whether or not it was proper, the way they kept the records and so on. So then the petitioning attorneys came back to the court on a second hearing and said, oh, by the way, there was a petition to reconsider and there was a retainer agreement in this case, and here's the retainer agreement. And Judge Malik said, well, I'm making my decision based upon the provisions under the Probate Act and not based upon your retainer agreement. And that's because they were petitioning for fees under the Probate Act. Well, counsel, who retained you in connection with this matter? Dennis Ritton. Okay. Ritton retained you? Yes. And originally you filed your petition for fees against? The estate. Okay. And then when the Probate Court granted you a certain amount of fees, less than what you were seeking, now you're seeking it against Ritton, but who represents the estate? Is Ritton involved with the estate? Ritton became, at the very end of the case, the guardian of the estate, so he represented the estate at that particular point. So doesn't he have the same interest in minimizing the fees? Why is the interest of the estate, you're saying, different than Ritton's interest? Why isn't his interest the same? They're trying to minimize fees from the estate. Because Ritton retained you individually and said, this is what I want to do as an individual. I want to petition the court to have a guardianship appointed for my aunt. Yes. And I want you to represent me individually in order to pursue that petition. To accomplish that, right? At the end, we want to have a guardianship appointed. I will pay you your attorney's fees for representing me individually to get this job done. Okay, here's a retainer agreement signed here. These are the provisions of the retainer agreement. I will petition the guardianship estate to recover fees, and if I recover fees, that will be an offset against what you owe me. But you are responsible to me for the fees that you have agreed to pay under the terms of this contract. And if I don't recover all the fees from the guardianship estate, I'm looking to you for the balance of that recovery. Now, if my fees, Dennis Ritton individually, are not reasonable, that's a determination to be made in the small claims suit by the small claims court. Were these fees, according to the contract test, reasonable? Not under the probate act. Are you saying again that you chose not to present the retainer agreement? Why to the probate court? Why wouldn't that have been at least a consideration? Why did you not do that? Because I'm proceeding under the probate act to recover guardianship fees against the guardianship estate. Does that act prevent you from having a retainer agreement? No, it doesn't prevent me from having a retainer agreement with the individual out here as an aside. But I don't have a contract with the estate. I couldn't have a contract with the estate because Dennis Ritton was my guardian at the point, at the time that he retained me. He was an individual. How would you respond to this, reducing it to sort of a blunt question? How would you respond to the argument then, under your theory, you'd be entitled to a double bill for exactly the same work? You petition the probate court, and then you decide to go in to small claims and recover twice for the same work. Well, I believe under several principles of the law I wouldn't be entitled to recover twice, not the least of which is my representation to the client. I am petitioning for fees from the guardianship estate. And to the extent that I'm paid, then you're not responsible. To the extent that I'm not paid, you are responsible. But you didn't cut the – you petitioned the probate court for the entire amount of your fees. You didn't do part of it in probate and part in small claims. That's right. That was my agreement with my client. My only question is, the work that you're charging for, the attorney work that you're charging for, relates only to the probate estate or the guardianship estate. The guardianship. Is that correct? Yes. And you're taking the position that if the judge sets a fee, hourly fee, for doing the guardianship work, you could have a separate agreement outside of the guardianship that would entitle you to additional fees for the work done in the guardianship. Yes. I could tell you a story about my personal experience about 30 years ago when I was a probate judge, but I won't. We're interested. I'll tell you. Thank you. The court stands – Wait, wait, wait. Oh, I'm sorry. May it please the court. I'm Jeff Orduno. I represent the defendant Tapley, Dennis Ritten. I will try to pick up essentially where the questioning left off from Mr. Leibovich. I would point out a couple of things. First of all, the trial court ultimately found in the order at page C53 of the record, as a factual, evidentiary matter, that the reasonable fees for everything done was that $15,000 amount. So in a way, what happened with Mr. Leibovich's case is it became kind of an after-the-fact, very convoluted, too-late motion to clarify, upon which Judge Gulley ultimately tells us that, yes, when I said $15,000, I meant that was the total reasonable fee, to take the words from the order. She says total reasonable fees of $15,000. For everything. For everything. I'm sorry. To say, quote, for everything adds words, and I don't want to do that. But I will tell you that she looks and says, look, I made findings that $250,000 was reasonable, not $275,000. That $60,000 was reasonable, not whatever was sought. $15,000, total reasonable fees. That's a factual, evidentiary finding. So in a way, Mr. Leibovich wants to make it sound as if he never got a fair shake on the retainer agreement. But that argument fails for two reasons. Firstly, as Your Honors have pointed out, the time to have raised that would have been back in the probate hearing, at which point had he said, look, here's this retainer agreement, Your Honor, when we say $15,000, you don't mean that's all I ever get, right? That would have been the time for that battle, both in terms of fairness to all the parties involved, and in terms of the court's efficiency, and ultimately in terms of res judicata. Instead, he comes back after the fact and tries to kind of beg that question and reframe that question or repackage it in a way that I think we all see what's happening. That's one issue. The second issue is simply that Judge Gulley ultimately found that the res judicata applied. And it seems clear, I think, from Justice Bowman's questioning that my client, Dennis Ritten, is a privy in the sense of he would be stuck with whatever was found in that earlier proceeding. Had Judge Gulley said, okay, well, Mr. Leibovich, you get $15,000, and then Dennis Ritten individually owes the other $8,000, I don't think we would have been jumping up and down saying, well, wait a minute, wait a minute, he's not a party to this. I think we may have been saying, wait a minute, why is that the case? Clarification, please. But I don't think anybody seriously would contend. Like, it's not as if he's some guy off the street, some random third person. I mean, he is a privy to what's going on. He knows what's happening, and he's involved in it. He's making sort of a fundamental fairness argument. He said, well, why can't I have this agreement with Ritten? Okay, I'll go into the probate court, and I won't really press – I'll be reasonable with the probate court. But if I end up getting shorted here, and you agree that I should get greater fees, why, as a matter of fundamental fairness, can't he say I'll be made whole later? The reason I would say that – Because of residue to count, or what is your most compelling argument to respond to that issue? Your Honor, I believe reasonableness of fees is the most compelling answer to that. Simply that cases like Doyle and Sass, this Court's decision in Sass, tell us that regardless of any retainer agreement, the court, usually the trial court in the first instance, can always look to the overall reasonableness of fees under Rule 1.5 and under the guidelines we have in cases to determine whether fees are reasonable. And here, Judge Gulley ultimately made that finding twice. She made it the first time, and in case there was any unclarity, she made it yet again, that the total reasonable amount of fees, $15,000. In the trial court's estimation, no more was properly to be billed or owed on this matter. Because the trial court took into consideration, in other words, all of the work that he did was taken into consideration. It was presented to the probate court, not part of it to the probate court, not part to the small claims, correct? That's correct, Judge. I mean, that's, if I understand your question correctly, I would say yes to that. And in fact, in responding to Mr. Lipovich's affidavit in its paragraph 4, it basically tries to, in the registry of account argument, tries to say, wait a minute, Your Honor, all the trial court considered back then was essentially all the probate issues and whether, you know, the impact of the fee on the estate and things like that. And this is at page C-55 of the record. And basically, it's two untethered matters. As we hear Mr. Lipovich argue today, he's saying it's two untethered matters. The trial court expressly finds in its order at C-53 that I disagree. The court disagrees with what Mr. Lipovich has articulated in his paragraph 4 of the affidavit. The court is saying all things considered, I don't know how else this would be construed. When the trial court says it disagrees with paragraph 4 of his affidavit, the court basically says all things considered, $15,000, total reasonable fees. I considered everything I needed to consider. So I think that's probably the bigger argument here, Your Honors, is simply that it would be inequitable based on the trial court's factual and evidentiary findings that there is no basis in the record to overturn those, by my estimation. Based on that, $15,000 is the right amount. What about the C-53 also has this additional twist of a sort of an equitable argument here? He's saying the principles of equity should guide the application of raised judicata, and it could be relaxed or should be relaxed if fundamental fairness requires it. How do you respond to that argument? Your Honor, I would suggest that the fundamental fairness here is it would cut against my client if we were to allow this kind of after-the-fact attack for two reasons. First of all, just under general raised judicata principles, I mean, how much time and money does my client have to invest in terms of coming back and relitigating what is essentially the same issue? I mean, that's one of the reasons we have raised judicata. Number two, under these specific facts, it's not as if no opportunity was ever given to the plaintiff to make its case for these fees. It might be a different posture had there never, ever been any fees paid out in the first place. Second, and it's kind of in addition to that, Judge, I would point to the Cantwell case where we see the First Districts come back and say, in that case, there's a marital dissolution and there's some fees awarded in that, but only by the opposing spouse. The attorney comes back and says, well, you know, my own client told me not to seek my fees because she didn't want to raise a ruckus. Those are my words. She didn't want to raise a ruckus at that time. So, you know, here I am six years later asking both the spouse and my client for more fees. And the First District really had no problem in Cantwell saying, no, res judicata. Attorneys are privy in this in terms of res judicata because they are parties for the purpose of collecting their own fee. So I think that stretches equity. It would not only be an equitable line to my client, but it stretches the equitable issue there, I think, too far to try and do that. Do you agree or his position? I'm not sure how much is supported by the record. I'm not suggesting it's not supported by the record. But what's your view of this? I understand your point statement that Mr. Dennis and he had an agreement that he would try and collect what he could from the probate court. And it was less than the retainer designated fees or way to calculate fees that Dennis was responsible for those personally. Your Honor, I don't believe I'm I've read the retainer agreement several times, but it's not fresh in my recollection. But I would tell you, I don't believe that it speaks precisely to this issue of I don't believe Mr. Leibovitch could point to a paragraph that says in the event that the trial court only awards X amount of my fees, then Dennis Wright and you owe the rest. I believe Mr. Leibovitch is really kind of spinning that argument up from just the general retainer agreement that basically says, yes, I agree to pay your reasonable fees and costs. I don't believe that there is an override paragraph like that. And I'm not sure what effect that might or might not have. Well, that's my personal opinion. What if that is the case? What if that's the agreement? Well, then what would happen? Your Honor, were that the agreement, I would still suggest that there would be a res judicata problem and still a reasonableness of fees problem that would both apply here and would still be true in a more general sense. Because I think the reasonable fees, essentially, I think what they might do is sharpen the issue for the trial court. Whereupon the trial court would say, presumably when presented with this retainer agreement in the first case, would say, okay, I see that paragraph. So I see that I need to parse out. When I say reasonable, I mean reasonable vis-a-vis the estate versus reasonable vis-a-vis the individual who may have to pick up some slack. There would be that. That would get parsed out. But I think that still there's going to be some assessment, as there was here ultimately, of this is the only total reasonable fee. You know, you don't get to because you have two separate clients, basically compound fees. Based on Justice O'Malley's interesting comment or question, you may or may not know this, depending on whether you do a lot of family court work, but I seem to recall a case where an attorney once had a position where there was such a thing as a nonrefundable retainer agreement, where a client tenders a tremendous retainer, let's say $50,000 in what was perceived to be a complicated marital case, and then decides to go to another attorney the next day. And the first attorney says, wait a minute, we have a nonrefundable agreement. You owe me $50,000. I'm keeping your $50,000. It's sort of an adjunct of what you're seeing. There has to be an issue where the retainer agreement can't trump general contract principles, I mean, or general equitable principles. I don't think – I think there was a case that said you can't do that. There's no such thing as a nonrefundable retainer agreement under all circumstances. And his argument would be akin to that. You're saying, look, you're having this agreement that says no matter what happens, I still have a right to go back against you. You're saying that that would be, obviously, fundamentally unfair to your client. It would be fundamentally unfair. Thank you, Justice Hudson, for that. No, I'm not familiar with that case, and I've never received a retainer like that, for better or for worse. But, yeah, that's essentially it. I mean, you still have the fundamental reasonableness issue, and I think you still have the rest of the county issue. The time to bring it was back then. I mean, that would – Well, his argument, though, is that what's reasonable is kind of a – it's actually a fluid concept. There's not some objective number, so you're going to take everything into consideration. One of the things you'll take into consideration is the size of the estate, et cetera, et cetera, and the provisions of the Appropriate Act might be a completely or a significantly different analysis if it's being done in light of an agreement between the parties. I mean, it's not pretty – you know, it's not routine for trial courts to say, Okay, this personal injury case settled pretty quickly. I think one-third is unreasonable. They should have done that on a regular basis. There would be a human cry pretty quickly. So it's pretty unusual for a trial court to knock out a retainer. I mean, if it's outrageous like Justice Hudson's question, that's one thing. But, you know, the difference between 250 and 275 – But anyway, his point is that what's reasonable if you're taking it in light of an agreement between parties, you know, the freedom to enter an agreement would seem to be pretty compelling. It might lead to a different result. But that doesn't answer the waiver question. I see it as a waiver question, really. Sure. Judge, and that's another – yeah, that would be another way to cast what's happened here was whether there was waiver. And in terms of the point you just raised, you know, I would say that the court – we see Enright Sass, this court, doing it. The court does sometimes pass upon those things. But I guess the point is, kind of like you say with the waiver, you've got to bring it up. You've got to make sure everything gets covered in that first round. And any agreement, the retainer agreement in this case, as you recall, doesn't carve out that exception that specifically told your client and your client understood and agreed, look, if my fees don't get completely paid in the probate action pursuant to this retainer agreement, you acknowledge I still have an action against you later. It doesn't say that, does it? I don't believe it says that, Your Honor. And, in fact, had my client been aware – this is going a little beyond the record – but had my client been aware at the time that this was going – this convoluted, protracted litigation was going to be the outcome of the $8,000-and-some that was at issue back then that Mr. Leibovich didn't seek, really, at that time or didn't seek clarification on, I can guarantee there would have been, as any reasonable litigant would do, there would have been some analysis of it back then. I mean, this is certainly not the cheapest route for my client. Well, yeah, I can't – can you speak to that? But, I mean, if I was the client and I agreed to pay the guy $275 an hour and then some judge comes along and says it's only going to be $250 and whatever other differences there were, I'd think, well, do I owe the guy what I agreed to pay him? There is something to be said for a retainer agreement, Your Honor. I agree with that, certainly, as a practicing attorney. And, to be honest, I can't speak to why Judge Gulley made that reduction here. And that's not really in the record. But I appreciate your point. No, it presented to her this retainer agreement. Or did it? I mean, was it a retainer agreement? Was she aware of it? It is unclear whether she was aware of it in the probate case. It is clear that she was aware of it in the small claims case because that was part of the basis for Mr. Leibovich's new claim. They were combined. Right, and the cases were then consolidated. So, in making her ultimate ruling at C or order at C-53, she was, at that point, aware of the retainer agreement. The original fee had been, original fee petitions had been brought back before her, at least, you know, to refresh her recollection from the court record. And when she said $15,000 total reasonable fee, in the end, in the cases now on appeal, she was aware of the retainer agreement. Thank you. Your Honors. Thank you. Can you start out by answering that overarching critical question? Did your retainer agreement provide for that exception, that in the event you petitioned the court for fees and did not receive your full fees, you would have a right of action back against Ripken? Did the retainer agreement say that? Not specifically, no. But it will in the future, I can guarantee you that. Two points I wanted to make. First of all, by affidavit, and I alluded to this affidavit earlier, that I had filed with the court, I indicated that the trial court judge, Judge Gulley, had made a finding at the time she awarded the $15,000 in fees from the guardianship estate, that it was because of the fact that there were three attorneys involved, because of the size of the estate, because of the factors contained within this guardianship estate. Now, the judge made a finding at the point where these two cases, the small claims and the probate, were consolidated. The judge made a finding that... Excuse me, but how did they get consolidated? How did that happen? Well, I had filed the small claims complaint. It was assigned to the small claims judge, Judge Fabiano, and a motion was brought by the defendant, by Mr. Ritten, to consolidate these two cases. And that was a contested issue. You objected to that? I objected to that, yes. Okay, I'm just asking the history. Go ahead. So you objected to it? And then Judge Fabiano granted the motion to consolidate, so both cases were consolidated and went back to Judge Gulley. Okay, go where you were. I just wanted to find out how that happened. And so my point is, Judge Gulley said, I disagree with this, but she didn't say how she disagreed with it. She didn't say specifically, I didn't find that. I knew or I didn't know about a retainer agreement. A retainer agreement was involved. All she said was, I disagree. So we have my affidavit, which would tend to show that her considerations, if my affidavit is to be believed, were under the probate act. Under the probate act. And that's all she was determining it on. And I'm saying there's a separate issue out here concerning contract. All right. The other point I wanted to make is when Mr. Ritten signed this retainer agreement, he put down $3,000. The Judge Gulley, the probate judge, awarded $15,000. She didn't award any costs. I had out of pocket costs. She didn't award any costs. She just said $15,000. And so the point I was going to make is with this award of $15,000 in fees in the guardianship case, it basically precluded me from being able to argue later on that I had a contract. I mean, I believe in future cases there's got to be some guidance here. In future cases, are you going to be cut off or is any attorney going to be cut off under the case law from being able to enforce their contract for their retainer agreement for recovery of attorneys' fees? But before we reach that, see, it doesn't really – this case wouldn't address that because you did not present the retainer agreement to the probate court, even though there was nothing to preclude you. So maybe in hindsight, that would have been a good thing for you to do, is to present everything to the probate court instead of splitting your theories here. Okay, but is it relevant? Is it relevant under the Probate Act to present your retainer agreement? Why would it be irrelevant? It's irrelevant because the considerations are under the Probate Act and everything that – all the case law, all the guidelines for an award of attorneys' fees under the Probate Act. The contract consideration doesn't – I mean, as is indicated in the case that was cited by the appellee, there is nothing in the Probate Act that says anything about a retainer agreement or that the court should consider a retainer agreement. Well, nevertheless, you should have been left up to the court. You should have presented the retainer agreement, and the court could have said, I find this to be legally irrelevant. Well – Right? I mean, do you agree with counsel's statement that the retainer agreement uses reasonable fee language? Yes. It does. I'm sorry. What does that mean? It says in there – I thought it said X dollars per hour, or does it say reasonable fees? It doesn't say X dollars per hour. It's subject to some judge saying reasonable fees. It specifically states $275 per hour. I don't see – Well, I can fight with this. What is the reasonablest – I think even in contract for recovery of attorneys' fees, the court always retains jurisdiction to determine whether or not your fee is reasonable or your hours are reasonable, even when you're trying to recover under contract. Exactly. If you petition the court, the court has something to say about the fees. Yes. Notwithstanding your retainer fee. All I'm trying to say here is I never got a chance to have the court consider my contract with this individual concerning recovery fees. So there was never a determination as to whether or not under the terms of the contract there was a reasonable fee charge. But it sounds to me like that's exactly what happened after the consolidation. I mean, it's one thing to have not done it ahead of time, but when your objection was consolidated, she had looked at it, and as your opponent said several times, she said the reasonable amount of fees in total is $15,000, and at that time she had consolidated the cases that were in front of her, including the contract. No, I believe what she said was your case is dismissed because of res judicata. But she still had the retainer agreement in the petition, correct? I mean, it was before her recess. Yes. Okay. It wasn't that she was totally unaware of the retainer agreement. It wasn't that she was totally unaware of it, but she said, I don't have to reach that, and I'm not reaching that because of res judicata.  All right. Case is taken on the device. The court stands at recess.